## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

JACOB R. WIEDEN,

      Plaintiff,

vs.

ANDREW M. SAUL[1],
Commissioner of Social Security,

      Defendant.

No. 18-cv-3045-LTS

**REPORT AND RECOMMENDATION**

---

Plaintiff, Jacob R. Wieden ("Claimant"), seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 401 *et. seq.* Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. For the reasons that follow, I recommend that the ALJ's decision be **reversed** and the case **remanded** for reconsideration consistent with this Order.

## I.    BACKGROUND

I adopt the parties' Joint Statement of Facts (Doc. 11) and therefore only summarize them here. I point to additional facts in the record where they are relevant to this Report and Recommendation. This is an appeal from a denial of a request for supplemental security income ("SSI") benefits. Claimant was born on January 22, 1997.

---

[1] After this case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25 (d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this lawsuit.

(AR[2] at 11.)   He completed high school.  (*Id.* at 33.)   Claimant's Application for Supplemental Security Income alleges he has been unable to work since his date of birth and lists as the basis for his disability "most likely depression and anxiety disorders." (*Id.* at 243-44.)

The claim was filed on January 5, 2015.  (*Id.* at 44.)   Claimant was initially denied benefits on May 7, 2015.  (*Id.* at 159.)   Upon reconsideration, his claim was denied.  (*Id.* at 173.)   On May 25, 2017, ALJ Michael D. Burrichter held a hearing and on October 4, 2017, issued an unfavorable decision holding Claimant was not disabled. (*Id.* at 74-113.)

At the May 25, 2017 hearing, Claimant was represented by counsel.  (*Id.* at 75.) The ALJ received testimony from Claimant, Andrea Lansing (i.e., Claimant's residential and post-residential therapist) and a vocational expert Jerry Beltramo.  Their testimony is discussed in the Statement of Facts (Doc. 11) and below.

A.   *Claimant's History of Mental Health Issues*

The record is replete with evidence of Claimant's struggles with anger and behavioral problems since he was a kindergartner.  (AR at 474.)  His disruptive behavior in middle school resulted in a Behavior Intervention Plan.  (*Id.* at 316-21.)  He was placed in foster care in 2012, but was removed following his assaultive behavior toward his foster parents.  (*Id.* at 341.) He was placed in a licensed foster group home by an order of a juvenile court on June 13, 2013 (i.e., at age 16 and one-half).  (*Id.* at 343.)  Claimant received his first psychiatric assessment and consultations at Lutheran Services in Iowa in August 2013.  (*Id.* at 475-76.) The unnamed evaluator noted Claimant's multiple behavioral problems, as well as his difficulty with depression and anxiety, and ultimately diagnosed him with dysthymia and anxiety disorder not otherwise specified.  (*Id.*)

---

[2] AR cites refer to pages of the Administrative Record.

Case 3:18-cv-03045-LTS-MAR    Document 16    Filed 07/26/19    Page 2 of 27

On December 5, 2013, the juvenile court noted,

> The child was placed at Bremwood Lutheran Children's Home in Waverly Iowa, on June 27, 2013. He has progressed to Level 4.8 and will soon transition to pre-independent living in the Exodus program he is attending public school and receiving above average grades. He seeks to graduate from high school and attend college. The child has successful home visits, however, there is no plan to return him home after discharge from foster group care but rather to progress to supervised apartment living.

(*Id.* at 338.)

In June 2014 (i.e., when he was approximately 17 and one-half years of age), Claimant showed some progress, although he still struggled in the group home environment with chores and other job-related tasks. (*Id.* at 443.) Despite these on-going struggles, Claimant was discharged into Supervised Apartment Living on December 1, 2014 having "completed his residential treatment goals." (*Id.* at 477.) Nevertheless, the record details his continued struggles with aggressive behavioral problems, as well as his difficulties with his mood disorder, anxiety disorder and depressive disorder, even in this controlled atmosphere. (*Id.* at 478.)

Claimant was evaluated by Paul M. Conditt, Psy.D. on November 20, 2014. Dr. Conditt noted, "Jacob Wieden is a 17-year-old young man who will age out of the foster care system in January when he turns 18." (*Id.* at 456.) Among other diagnoses, Dr. Conditt noted anxiety disorder and "need for residential placement." (*Id.* at 457.) Dr. Conditt's opinions are is discussed in the ALJ's decision. (*Id.* at 20-21.)

Dr. Marvin Piburn, is Claimant's treating psychiatrist. The ALJ's decision to give his opinion only partial weight is the basis for Claimant's only substantive objection to the ALJ's ruling. The ALJ explained his decision to afford Dr. Piburn's opinion only partial weight as follows:

> [I]n particular, they are not consistent with the educational assessment at Exhibit 7E which, while supportive of limitations does not indicate

3

limitations as extreme as those assessed by Dr. Piburn. It is inconsistent with the assessment in Exhibit 2F, which was grossly normal and indicated that the claimant would have the abilities to attend college. Likewise, it is inconsistent with the claimant's own testimony. As discussed further below, the claimant testified that he is picky with regard to jobs and that there are several jobs that he would not do. He also described himself as "basically a lazy person." Given all of these factors, Dr. Piburn's opinion has been given only partial weight.

(*Id.* at 31.) Exhibit 2F is Dr. Conditt's report described above. Exhibit 7E is the educational assessment prepared by Kevin McRae in March 2015. Thus, both were created before Claimant turned 18 and "aged out" of the foster care system and the structured living environments that had enabled him to function and held out some hope Claimant could even attend college. (*Id.* at 457.) The educational assessment does supply some support for Dr. Piburn's concerns:

Anxiety disorder – panic attacks – has to sometimes leave school in order to de-escalate. . . . Jacob becomes physically agitated as he becomes anxious. He often was to leave a particular class or setting if he is more anxious due to peer comments or perceived social pressure. He often takes peer comments out of context and creates problems where none exist. . . . Jacob is a very bright student with a profound anxiety disorder. He has trouble forming lasting relationships with peers and sometimes seeks attention from adults via his anxiety. *Jacob's anxiety is pervasive and occurs in all settings*.

(*Id.* at 380-81) (emphasis added). Notably, Dr. Conditt's report is mostly concerned with Claimant's academic performance and intelligence. (*Id.* at 446-58.) The purpose of Dr. Conditt's evaluation was "to determine what supports [Claimant would] need" when he age[d] out of the foster care system." (*Id.* at 456.) Dr. Conditt noted on Axis IV of the DSM-IV diagnosis, "need for residential placement." (*Id.* at 457.) "Axis IV refers to psychosocial and environmental problems that may affect the

diagnosis, treatment, and prognosis of mental health disorders." Am. Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders* 29 (4th ed. 1994).

## B.    *The ALJ's Decision*

The ALJ's decision analyzed Claimant's disability and entitlement to benefits both as a child and as an adult.  (*Id*. at 12-15.)  The ALJ found that prior to reaching age 18, Claimant at the following severe impairments: obesity[3]; depression/bipolar disorder; anxiety with panic; and borderline personality disorder.  (*Id*. at 16.)  He also found that Claimant did not meet any of the listed impairments for children, nor did his impairments medically equal any of those listed impairments.  Then, having determined that Claimant did not have an impairment or combination of impairments that functionally equaled the listings (*Id*. at 17-26), he concluded that Claimant was not disabled before the age of 18.  (*Id*. at 26.)

While the ALJ determined that Claimant did not have new impairments since becoming an adult, he did conclude the previously-identified impairments remained severe.  (*Id*. at 26-27), but did not meet or medically equal any listed impairments for adults.  (*Id*. at 27-28.)[4]  Ultimately, the ALJ determined Claimant was not disabled as an adult.  (*Id*. at 34.)

The ALJ issued his decision denying Claimant benefits on October 4, 2017.  (*Id*. at 11-35.)  On October 24 2017, Claimant filed a Request for the Appeals Council to review the ALJ's decision.  (*Id*. at 240.)  On May 15, 2018,  the Appeals Council found there was no reason to review the ALJ's decision.  (*Id*. at 1-6.)  Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner.  *See* 20 C.F.R. § 416.1481.

---

[3] At the time of the hearing, Claimant was 5'11" or 6' and weighed 355 pounds. (AR at 85.)
[4] The ALJ's residual functional capacity finding will be discussed in Part II.B., *infra*.

On July 13 2018, Claimant timely filed the instant complaint in this Court. (Doc. 4.) By February 15, 2019, the parties had filed their briefs and the Honorable Leonard T. Strand, Chief United States District Court Judge, referred the case to me for a Report and Recommendation.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability when, due to physical or mental impairments, the claimant

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A claimant is not disabled if the claimant is able to do work that exists in the national economy, but is unemployed due to an inability to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 416.972(a),(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 416.920(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity

("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. §
416.920(a)(4)(iv). RFC is what the claimant can still do despite his or her limitations.
*Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing 20 C.F.R. §§
404.1545(a), 416.945(a)). RFC is based on all relevant evidence and the claimant is
responsible for providing the evidence the Commissioner will use to determine the RFC.
*Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is
any work the claimant performed within the fifteen years prior to the claimant's
application that was substantial gainful activity and lasted long enough for the claimant
to learn how to do it. 20 C.F.R. § 416.960(b)(1). If a claimant retains enough RFC to
perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past
relevant work, then the burden shifts to the Commissioner to show there is other work
the claimant can do, given the claimant's RFC, age, education, and work experience.
*Id.* §§ 416.920(a)(4)(v), 416.960(c)(2). The ALJ must show not only that the claimant's
RFC will allow the claimant to do other work, but also that other work exists in significant
numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

## A.      *Claimant's Childhood Disability*

The ALJ first analyzed Claimant's childhood disability. 20 C.F.R Section 416.335
provides:

> When you file an application in the month that you meet all the other
> requirements for eligibility, the earliest month for which we can pay you
> benefits is the month following the month you file the application. If you
> file an application after the month you first meet all other requirements for
> eligibility, we cannot pay you for the month in which your application is
> filed or any months before that month."

In other words, the first month in which Claimant would possibly be eligible to receive
benefits would be February 2015 (i.e., the first month after he had turned 18).

Nevertheless, the ALJ analyzed Claimant's entitlement to benefits under the three-step sequential evaluation process to determine whether an individual under the age of 18 is disabled (20 C.F.R. Section 416.924(a)), as well as the five-step sequential evaluation process for determining whether an individual who has applied for supplemental social security income benefits and has attained the age of 18 is disabled (20 C.F.R. Section 416.920(a)). Claimant makes no separate claim of error with respect to the ALJ's conclusions regarding Claimant's disability prior to turning 18. It would unnecessarily lengthen this opinion to no apparent purpose to separately consider Claimant's claim for benefits under the standard set forth in 20 C.F.R. section 416.924(a). Therefore, I focus on Claimant's claim for benefits as an adult.

**B.     *The ALJ'S Findings***

The ALJ made the following findings at each step with regard to Claimant's disability status. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since the date the application was filed. (AR at 15.) Neither party takes issue with the ALJ's findings on this issue.

At step two, the ALJ found that since attaining age 18, Claimant has continued to have the following severe impairments: obesity, depression/bipolar disorder, anxiety with panic, and borderline personality disorder. (*Id.* at 59.) Neither party takes issue with the ALJ's findings on this issue.

At step three, the ALJ found that since attaining age 18, none of Claimant's impairments met or equaled a presumptively disabling impairment in the listings. (*Id.* at 60.) Specifically, the ALJ considered the "paragraph B criteria" and "paragraph C criteria" of two broad categories of mental disorders, listings 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). (*Id.* at 29-30.) Neither party takes issue with the ALJ's findings on this issue.

9

The ALJ noted:

> Before considering step four of the sequential evaluation process, I must determine the claimant's residual functional capacity. An individual's residual functional capacity is ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe.

(*Id*. at 48.) Claimant complains of the ALJ's conclusions at this stage of the process. Specifically, he complains the ALJ failed to give proper weight to Dr. Piburn's opinion in determining his residual functional capacity. Hence, this Report and Recommendation will focus on this issue.

At step four, the ALJ found Claimant had the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> [T]he claimant can occasionally climb ladders, ropes and scaffolds; and can frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl. The claimant can occasionally work at unprotected heights or with moving mechanical parts. The claimant is able to understand, remember, and carry out simple, routine and repetitive tasks in a work environment free of fast-paced production requirements involving only simple work-related instructions and decisions, and with only occasional judgment and workplace changes. The claimant can occasionally respond to and have interaction with supervisors and coworkers, and never with the general public.

(*Id*. at 61-62.)

At step five, the ALJ found that Claimant had no past relevant work. (*Id*. at 66.) However, he found there were jobs that existed in significant numbers in the national economy that Claimant could still perform with his RFC, including burr grinder optical goods and a bagger for laundry goods. (*Id*. at 67.) Therefore, the ALJ concluded that Claimant was not disabled. (*Id*.)

## C.    *The Substantial Evidence Standard*

The ALJ's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Moore*, 572 F.3d at 522. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). The decision is not outside that zone of choice simply because the court might have reached a different decision. *Id.* (citing *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001)); *Moore*, 572 F.3d at 522 (holding that the court cannot reverse an ALJ's decision merely because substantial evidence would have supported an opposite decision).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the ALJ's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

## D.    *Duty to Develop the Record*

The administrative hearing is a non-adversarial proceeding, and the ALJ has a duty to "fully develop the record." *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)). Because the ALJ has no interest in denying Social Security benefits, the ALJ must act neutrally in developing the record. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (citing

*Richardson v. Perales*, 402 U.S. 389, 410 (1971); *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994) (opining that "[t]he goals of the [ALJ] and the advocates should be the same: that deserving claimants who apply for benefits receive justice") (quoting *Sears v. Bowen*, 840 F.2d 394, 402 (7th Cir.1988)) (bracketed information added) .

## III.   DISCUSSION

Claimant alleges that this Court should reverse the final agency decision and enter judgment under sentence four of 42 U.S.C. Section 405 (g) because: (1) " the ALJ failed to give good reasons for assigning partial weight to the treating psychiatrist opinion of Dr. Marvin Piburn concerning Claimant's mental limitations" and (2) the ALJ was unconstitutionally appointed. After conducting a thorough review of the administrative record, I find that the ALJ erred in weighing the opinion of Dr. Piburn.  For the reasons set forth below, the proper remedy is to remand for further development in consideration of the evidence.

### A.   *The claim must be remanded to properly assess the opinion of Dr. Piburn.*

Dr. Piburn appears to have been Claimant's treating psychiatrist since December 5, 2014 when his first treatment note appears.  (AR at 471.)  His treatment notes are not devoid of relevant references to testing.  To the extent I can make out his handwriting in his treatment notes of this first visit, it appears he has reviewed psychological and neuropsychological testing.  (*Id*.)  The notes reflect,

> [T]esting reveals [full-scale IQ] 92, but a big split between verbal IQ 105 and nonverbal IQ 82, processing speed IQ 84, 14th percentile.  In other words, intelligence is normal but the various domains were quite different, one to another.  Psychologist [only caught?] Anxiety disorder, pretty much acted as if blind to the other diagnosis he has (i.e., there is a whole lot more going on than simple anxiety.)  . . .  He's never lived on his own and is floundering, and struggling with things like shopping, cleaning and bill paying.  The first two tasks require transportation which he does not have. Bill paying is alien to him.

(*Id.*)  Dr. Piburn had follow-up visits with Claimant on February 4, 2015 and March 20, 2015; that is, during the period Claimant was transferring away from a structured living environment toward independent living.  (*Id.* at 464-69.)  Dr. Piburn's treatment notes over July 22, 2016 and January 6, 2017 document Claimant's decline in mental health, deterioration of his physical condition, and his inability to function outside a structured living setting.  (*Id.* at 599-615.)

The ALJ discussed Dr. Piburn's opinion as follows:

> The opinion of Marvin F. Piburn, M.D., a treating physician, has been given partial weight. In his formal opinion, Dr. Piburn assessed extreme limitations. In a check-box portion of his opinion, Dr. Piburn rated the claimant's limitations on a scale of 1 to 5, with 5 representing a complete inability to perform the rated task on a regular, reliable, and sustained schedule. Dr. Piburn indicated that the claimant would be unable to perform a number of tasks such as performing activities within a schedule, maintaining regular attendance, and sustaining and [sic] ordinary routine without special supervision. He rated a [sic] slightly less severe, but still significant degree of restriction in a number of areas, including the claimant's ability to interact appropriately with the general public, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. In summary, Dr. Piburn rated the claimant as having marked restriction in his activities of daily living; extreme difficulties in maintaining social functioning; as well as "constant" deficiencies in concentration, persistence, or pace; and "continual" episodes of deterioration and decompensation. Dr. Piburn indicated that he would rate the claimant as having a GAF score of 30, representing "severe disabling illness." In narrative explanations Dr. Piburn indicated that the claimant has compliance issues which are a part of his symptomology, and described him as self-defeating. (Exhibit 11F.) In treatment notes Dr. Piburn also indicated his belief that the claimant had extreme limitations, and opined that he would be disabled. (*See,* Exhibit 12F.) As a treating physician, Dr. Piburn can be expected have particular insight into the claimant's functional restrictions over time. However, while the record does support some degree of limitation, the extreme nature of the limitations assessed in this opinion are not entirely consistent with or supported by the medical evidence as a whole. In particular, they are not consistent with the educational assessment

at Exhibit 7E, which, while supportive of limitations does not indicate limitations as extreme as those assessed by Dr. Piburn. It is inconsistent with the assessment in Exhibit 2F, which was grossly normal and indicated that the claimant would have the abilities to attend college. Likewise, it is inconsistent with the claimant's own testimony. As discussed further below, the claimant testified that he is picky with regard to jobs and that there are several jobs that he would not do. He also described himself as "basically a lazy person." Given all of these factors, Dr. Piburn's opinion has been given only partial weight.

(*Id.* at 64-65.)

### 1. *Legal Standard*

"'A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record as a whole."[5] *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quotation omitted). "Even if the treating physician's opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight." *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (citation and bracket omitted). However, a treating physician's opinion can be given limited weight if it contains only conclusory statements, contains inconsistent opinions "that undermine the credibility of such opinions," is inconsistent with the record, or if other medical opinions are supported by "better or more thorough medical evidence." *Id.* (citations omitted). An ALJ must "give good reasons" for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); *Walker v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 550, 554 (8th Cir. 2018) (remanding case to the ALJ for further proceedings because ALJ "simply ignore[d]" treating physician's

---

[5] Under current regulations, a treating physician's opinion is entitled to no special deference. *See* 20 C.F.R. § 404.1520c(c). These regulations became effective on March 27, 2017. 20 C.F.R. § 404.1527. However, Claimant's claim was filed on January 5, 2015. Therefore, the old regulations apply. *See id.*

opinion). A proper evaluation of a physician's opinion requires consideration of the following factors: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors.[6] 20 C.F.R. §§ 404.1527(c)(1)-(5), 416.927(c).

### 2. Analysis
#### a. Examining Relationship

"Generally, [ALJs] give more weight to the medical opinion of a source who has examined [a claimant] than to the medical opinion of a medical source who has not examined [a claimant]." 20 C.F.R. § 404.1527(c)(1). Dr. Piburn is Claimant's treating psychiatrist and examined him multiple times over the few years that Claimant was seeking treatment. In general, his opinion should be entitled to more weight than the opinions of the reviewers who did not examine Claimant. Neither of the state agency doctors whose opinions the ALJ considered had examined Claimant and their record reviews were completed before Claimant's attempt at living alone failed. (AR at 122-35, 136-54.) On May 7, 2015, Dr. Scott Shafer reported, "[T]he claimant lives alone. He has no problem with personal care; prepares frozen meals and sandwiches daily; and does cleaning and laundry." (*Id.* at 127.) Dr. Aidaluz Tirado echoed these remarks on July 25, 2015 when he affirmed Dr. Shafer's assessment on appeal. (*Id.* at 144.) However, by January 6, 2017, Dr. Piburn noted, "[That no one wanted to hire Claimant] is totally unsurprising. His hygiene and appearance is awful. Like I said he looks like someone

---

[6] "Other factors" can include information claimants or others bring to the Social Security Administration's ("SSA") attention, or of which it is aware, which tend to support or contradict a medical opinion. "For example, the amount of understanding of [SSA] disability programs and their evidentiary requirements that a medical source has, regardless of the source of that understanding, and the extent to which a medical source is familiar with the other information in [a claimant's] case record are relevant factors that [SSA] will consider in deciding the weight to give to a medical opinion." 20 C.F.R. § 404.1527(c)(6).

walking straight off the homeless street scene." (*Id.* at 613.) This factor weighs in favor of affording the opinion more than partial weight.

### b.    Treatment Relationship

"Generally, [ALJs] give more weight to the medical opinions from [a claimant's] treating sources. . . . When the treating source has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment, [the ALJ] will give the source's opinion more weight than . . . if it were from a nontreating source." *Id.* at § 404.1527(c)(2)(i). In addition, "the more knowledge a treating source has about [a claimant's] impairment(s), the more weight the [ALJ] will give the source's opinion." *Id.* at § 404.1527(c)(2)(ii). As discussed, Dr. Piburn is Claimant's treating source. Dr. Piburn saw Claimant during the period documented in the record. In addition, Dr. Piburn has treated Claimant for his mental health issues during this period, and therefore Dr. Piburn's opinion should be given increased weight. *See Shontos v. Barnhart*, 328 F.3d 418, 426-27 (8th Cir. 2003) (reversing decision of the ALJ because ALJ did not give controlling weight to opinions of treating mental health providers who saw claimant frequently enough to gain "longitudinal picture" of claimant's impairment over the course of fifteen months).

### c.    Supportability

"The better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion." 20 C.F.R. § 404.1527(c)(3). The ALJ does not criticize Dr. Piburn's opinion for lacking sufficient support. In fact, the ALJ noted that Dr. Piburn did support his opinion. (AR at 64) (noting that Dr. Piburn provided "narrative explanations" to support his conclusions and that Dr. Piburn's treatment notes were in concert with his conclusions). I also find that Dr. Piburn provided much support for his opinion. First, although given a form document upon which to write his opinion, Dr. Piburn supplemented his answers with long handwritten notes

supporting his conclusions, elevating the form from a document that contains merely "checked boxes, circled answers, and brief fill-in-the-blank responses" of "little evidentiary value" into a well-supported opinion. *See Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018). Second, Dr. Piburn attached treatment notes to his opinion that support his conclusions. (AR at 593-615.) Third, Dr. Piburn's other treatment notes support his opinion and document Claimant's self-defeating attitude, anger management issues, anxiety issues, and the difficulties Claimant has when trying to live independently. (*See e.g.*, *id.* at 466, 468, 472, 608, 613.) Therefore, this is not a basis to afford his opinion only partial weight.

### d.   Consistency

"Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4). Dr. Piburn supported his conclusions about the severity of Claimant's disability. He noted that Claimant's mental disorganization and self-destructiveness led Claimant to miss six out of nine scheduled appointments. (AR at 593.) He further noted, "If we still used the DSM IV, [Claimant's] GAF would be 30 (severe disabling illness)." (*Id.*) He noted how Claimant's depression was interfering with his ability to seek treatment for his high blood pressure and will exacerbate his obesity. (*Id.*) Dr. Piburn offered his opinion that Defendant was not a malingerer and that his "non-compliance is secondary to mental illness, to personality disorder." (*Id.* at 594.) Dr. Piburn assessed the degree to which the functional limitations exist as a result of Claimant's mental impairments. He rated the "restriction of activities of daily living" as "marked;" "difficulties in maintaining social functioning" as "extreme;" "deficiencies of concentration persistence or pace resulting in failure to complete tasks in a timely manner in work setting or elsewhere" as "constant"; and "episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw

from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors)" as "continual." (*Id.* at 597.)

Claimant argues that Dr. Piburn's assessment of the severity of Claimant's impairments and their impact on Claimant's ability to function differ from Dr. Condit's November 21, 2014 assessment (Exhibit 2F) and the educational assessment from March 2015 (Exhibit 7 E) because at the time Dr. Piburn was making his assessment, Claimant had been removed from a structured living environment. The Commissioner counters that Claimant is merely speculating that the two evaluations (i.e., Exs. 2 F and 7 E) did "not necessarily translate into Claimant being able to perform substantial gainful activity." (Doc. 13 at 10.)

The Commissioner asserts that the ALJ properly considered the post-May 2015 evidence, which it contends supports Claimant's ability to perform within the limits of the RFC. However, I see little in the ALJ's decision to indicate he considered the post-May 2015 evidence of Claimant's performance after having been removed from a structured living environment. The ALJ notes, "The claimant was described as 'struggling' with his living on his own." (AR at 19.) However, the decision also states, "the claimant also successfully transitioned to supervised independent apartment living around the time of his 18th birthday" (*Id.* at 22), but fails to address the Claimant's testimony that he was living in a homeless shelter by the time of the hearing. (*Id.* at 19, 89.) Claimant may have transitioned to supervised independent living when he was 17, and then to his own apartment while still in high school, but he was subsequently evicted after demonstrating his inability to manage on his own. (*Id.* at 90.)

I recommend the Court find that the ALJ did not weigh the relevant 20 C.F.R. § 404.1527(c) factors. The ALJ's entire discussion of what weight to assign to Dr. Piburn's opinion is quoted above. The ALJ justifies the decision to give Dr. Piburn's opinion partial weight because of inconsistencies "with the medical evidence as a whole" without

taking into account Claimant's change in circumstances and his deterioration after leaving a structured living environment. The ALJ also points to inconsistencies between Dr. Piburn's opinion and Claimant's testimony:

> Of particular note in the instant case is the claimant's own testimony with regard to his ability to work. At hearing [sic], the claimant testified that he was "basically a lazy person," and indicated that he was "very picky" about jobs and went into some detail about jobs that he would not do. He stated that he likes to do things his own way, and indicated that he was not interested in doing jobs where he would be managed by others. In particular, he stated that he does not want to be a janitor, or a fast food worker, or a shopping cart runner at a grocery store. He stated that he has been given advice to seek entry level employment, but that he does not want to do that because he is stubborn about what kind of work he is willing to perform.

(AR at 29.) This is far from the sort of testimony expected from a claimant eager to obtain benefits. One might conclude from Claimant's testimony that he is an overly candid and particularly poor malingerer. However, in this case, we have recourse to the medical evidence that overwhelmingly supports the diagnoses of a bipolar disorder (the dominant feature of which is depression), a generalized anxiety disorder, a panic disorder and a borderline personality disorder. (*See e.g.*, *id.* at 599.) Given that the symptoms of his disability make him a poor reporter of his symptoms, it would be a mistake to rely too heavily on Claimant's justification for his inability to sustain himself. In light of Claimant's diagnoses, his admission of malingering should not be afforded greater weight than his treating psychiatrist who opined, "This man may be the most self-defeating individual I have worked with in psychiatric practice for 42 yrs. (within the population of non-psychotic patients)." (*Id.* at 594.) *See also Pate-Fires v. Astrue*, 564 F.3d 935, 946-47 (8th Cir. 2009) (recognizing that a claimant's mental health issues may be the very thing that prevents the claimant from seeking help for a mental illness) (citation omitted).

Dr. Piburn's treatment notes document Claimant's severe anxiety and difficulty leaving home. Furthermore, Claimant's mood is noted to show his depression, anxiety, and anger. (*Id.* at 600.) Although the Commissioner takes issue with the fact that Claimant's symptoms are self-reported or merely "venting," (Doc. 13 at 15), Dr. Piburn's treatment notes document his observations of Claimant's state. (AR at 601-15.) Moreover, the ALJ's criticism of Dr. Piburn's opinion was that it was inconsistent with the reports at 7E and 2F and Claimant's testimony, not that they were internally inconsistent or lacked sufficient medical support.

I find that the ALJ failed to properly evaluate the consistency of Dr. Piburn's opinion. This could have affected the ultimate weight the ALJ gave to that opinion. On remand, the ALJ will need to properly weigh this evidence.

### e. *Specialization*

"[The ALJ will] generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). Dr. Piburn appears to be a licensed physician whose specialty is psychiatry. I have gleaned this from the nature and content of his treatment notes, which were transmitted as his "Psychiatric Progress Notes." (AR at 486.) His credentials are not stated in the records and, on remand, it would be well to develop the record on this issue to adequately weigh his opinion. Assuming Dr. Piburn is a licensed physician whose specialty is psychiatry, the ALJ was required to credit Dr. Piburn's opinion, if it was supported by the record. *See Brown v. Astrue*, 611 F.3d 941, 951, 954 (8th Cir. 2010) (affirming ALJ's decision to give greater weight to opinion of claimant's treating psychiatrist than to opinion of her family physician when claim was based on mental health issues).

I find that a proper review of Dr. Piburn's treatment notes and opinion would likely lead to a conclusion that his opinion is supported by the record as a whole. Therefore, Dr. Piburn's opinion should have been given more weight.

### f. Additional Arguments of Defendant

The Commissioner makes some additional arguments that I feel are necessary to address. The Commissioner states:

> Despite plaintiff's emphasis on his lack of success in pursuing a college education, findings in disability proceedings do not rest on whether a plaintiff is successful in pursuing a desired education or vocation. To the contrary, the Eighth Circuit Court of Appeals has held that a plaintiff's ability to attend school is inconsistent with disabling limitations. *Johnston v. Apfel*, 210 F.3d 870, 875 (8th Cir. 2000). Therefore, plaintiff's reliance on his lack of success in college is misplaced.

(Doc. 13 at 10) (internal citations to Claimant's brief omitted).

First, this misconstrues Claimant's argument. Claimant does not claim to be disabled merely because he has not been able to succeed in a desired vocational or educational pursuit. Claimant admits he is intelligent and was able to obtain above-average grades in high school, particularly in subjects that took advantage of his verbal skills. Claimant emphasizes, if at all, his failure at college to show how his disabilities prevent him from functioning and interacting with others in an unstructured environment. In other words, unlike the claimant in *Johnston*, whose ability to successfully attend school was consistent with other evidence demonstrating she was not disabled, Claimant's inability to attend school is consistent with his disabling limitations. *See* 210 F.3d at 875

The Commissioner states, "Dr. Piburn noted [in a July 22, 2016 appointment] that when plaintiff's mother attempted to chime in to promote the idea of counseling, plaintiff shut down the idea, as well as shut down the idea of any kind of inpatient treatment." (Doc. 13 at 12.) The Commissioner then argues that Claimant's "reluctance and/or refusal to pursue a recommended course of treatment weighs against claims of disability."

21

(*Id.*) (citing *Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016)). Dr. Piburn—whose opinion was not completely discounted by the ALJ—concluded Claimant's non-compliance was secondary to his mental illness. (AR at 594.) His conclusion is consistent with the testimony of Claimant's residential and post-residential therapist Andrea Lansing who testified at the hearing:

> Q. Dr. Piburn has been his psychiatrist. He indicated that [Claimant's] not very good at keeping appointments. Is that, is that a fair description?
> A. I would say that's a very fair description. He, especially when he's depressed, he won't get out of bed. He struggles with sometimes – he struggles sometimes with just remembering his appointments.

(*Id.* at 103.) The Commissioner does not cite evidence of Claimant refusing to participate in counseling. In fact, Claimant did obtain counseling a few months later. (*Id.* at 519.) The Commissioner cites no evidence any mental health professional suggested inpatient treatment. *Julin* held,

> Julin's inability to follow a recommended course of treatment also weighs against her credibility. Julin sometimes refused or was reluctant to change her medications. Julin contends that her resistance was the result of side effects that she experienced with several antidepressants, but Julin refused other changes in her treatment as well. Julin consistently reported difficulty sleeping to Dr. Welsh, but after the doctor prescribed a sleep aid, Julin did not use it. Julin likewise did not accept a physician's offer to arrange for therapy in November 2009. Although Julin did agree to Dr. Welsh's recommendations on other visits, the ALJ properly gave weight to Julin's resistance to some suggested courses of treatment.

826 F.3d at 1087. Reluctance or refusal to pursue treatment may be a basis for questioning a claimant's credibility. In this case, the Commissioner cites almost no evidence of Claimant's *refusal* to obtain treatment, as opposed to his *inability* to obtain treatment.

### 3. The case should be remanded for further development and consideration of the evidence.

Claimant argues that because Dr. Piburn's opinion, if given controlling weight, would demonstrate Claimant is disabled, the Court should remand for an award of benefits. "When the record is overwhelmingly in support of a finding of disability, there is no need to remand to the Secretary for further consideration." *Fowler v. Bowen*, 866 F.2d 249, 253 (8th Cir. 1989). However, the Eighth Circuit has held that courts should not award benefits unless "the record '*overwhelmingly* supports'" an "*immediate* finding of disability." *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (emphasis added). I find that Dr. Piburn's opinion should be appropriately weighed, not that the record overwhelmingly supports an immediate finding of disability. Therefore, the proper course is to remand for further development and consideration of the evidence.

### 4. Conclusion

I find that the ALJ failed to conduct a complete review of Dr. Piburn's opinion, and remand is required on this issue. On remand, the ALJ must conduct a proper review of Dr. Piburn's opinion under 20 C.F.R. § 404.1527(c) consistent with the findings of this Court.

### B. Claimant failed to timely raise his Appointments Clause argument under *Lucia v. SEC.*

In *Lucia v. SEC,* the Supreme Court held that ALJs of the Securities and Exchange Commission are "Officers of the United States" within the meaning of the Appointments Clause, and, therefore, the President, a court of law, or department head must appoint them. 138 S. Ct. at 2049. Claimant argues that Social Security Administration ALJs should be treated as improperly appointed "inferior officers" like the SEC ALJs in *Lucia*. Claimant asserts this Court should vacate the denial of benefits by ALJ Burrichter and remand the case for decision by what he contends is a properly-appointed ALJ. Claimant

does not point to where he raised this argument before the ALJ and essentially admits that he is asserting his Appointments Clause challenge for the first time in his opening brief to this Court. ("It would have been futile for Mr. Wieden to present an Appointments Clause [argument] to the agency.") (Doc. 12 at 13.)

Claimant does not argue that his case presents any factual or procedural differences from other cases that have previously been addressed by this Court. Indeed, this case has the same procedural posture as several other cases wherein this Court already addressed this issue (i.e., all administrative proceedings, including denial by the Appeals Council, were completed before *Lucia* was decided).

This Court has ruled in favor of the Commissioner on similar claims on many occasions. *See e.g., White v. Comm'r of Soc. Sec.*, No. C18-2005-LTS, 2019 WL 1239852, at *4 (N.D. Iowa Mar. 18, 2019); *Stearns v. Berryhill*, No. 17-CV-2031-LTS, 2018 WL 4380984, at *6 (N.D. Iowa Sept.14, 2018); *Davis v. Comm'r of Soc. Sec.*, No. 17-CV-80-LRR, 2018 WL 4300505, at *8-9 (N.D. Iowa Sept. 10, 2018); *Iwan v. Comm'r of Soc. Sec.*, No. 17-CV-97-LRR, 2018 WL 4295202, at *9 (N.D. Iowa Sept. 10, 2018); *Thurman v. Comm'r of Soc. Sec.*, No. 17-CV-35-LRR, 2018 WL 4300504, at *9 (N.D. Iowa Sept. 10, 2018).

In *Stearns*, this Court ruled as follows:

> The United States District Court for the Central District of California has considered *Lucia* in the Social Security context, holding that claimants have forfeited the Appointments Clause issue by failing to raise it during administrative proceedings. *See Trejo v. Berryhill*, Case. No. EDCV 17-0879-JPR, 2018 WL 3602380, at *3 n.3 (C.D. Cal. July 25, 2018). I find this holding to be consistent with [relevant precedent]. Stearns' argument that an issue need not be raised if the ALJ does not have authority to decide it does not hold water under *Lucia*. *Lucia* made it clear that, with regard to Appointments Clause challenges, only "one who makes a timely challenge" is entitled to relief. *Lucia*, 138 S. Ct. at 2055 (quoting *Ryder*, 515 U.S. at 182-83).

In *Lucia*, the Supreme Court acknowledged the challenge was timely because it was made before the Commission. *Id.* In the context of Social Security disability proceedings, that means the claimant must raise the issue before the ALJ's decision becomes final. . . . *Lucia* makes it clear that this particular issue must be raised at the administrative level.

Because Stearns did not raise an Appointments Clause issue before or during the ALJ's hearing, or at any time before the ALJ's decision became final, I find that she has forfeited the issue for consideration on judicial review. As such, her request for remand on this basis is denied.

2018 WL 4380984, at **5–6 (paragraph break added).

The Eighth Circuit has held that a party forfeits an Appointments Clause claim by failing to raise it to the agency. *See Kimberly B. v. Berryhill*, No. 17-CV-5211 (HB), 2019 WL 652418, at *14 (D. Minn. Feb. 15, 2019) (citing *NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 798 (8th Cir. 2013)). In the Social Security context, a claimant who fails to raise a claim before the ALJ waives the claim on appeal. *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003) ("Anderson never alleged any limitation in function as a result of his obesity in his application for benefits or during the hearing. Accordingly, this claim was waived from being raised on appeal.") Although Claimant argues that raising the issue during the administrative process would have been futile because Social Security EM-1003[7] prevented the ALJ from addressing the issue, nothing stopped Claimant from raising the issue during the administrative prosses and preserving it for appeal.

However, because I recommend that Claimant's request for remand should be granted on the basis of the failure to properly weigh the opinion of Dr. Piburn, Claimant

---

[7] EM-1003 was issued on January 30, 2018, and stated, "Because the SSA lacks the authority to finally decide constitutional issues such as these, ALJs will not discuss or make any findings related to the Appointments Clause issue on the record." It did not prevent claimants from making such challenges and, by its very existence, anticipated that claimants would make them.

should be permitted to assert this objection on remand. *See Weatherman v. Berryhill*, No. 5:18-CV-00045-MOC, 2018 WL 6492957, at *4 (W.D.N.C. Dec. 10, 2018); *Mann v. Berryhill*, No. 4:18-CV-3022, 2018 WL 6421725, at *8 (D. Neb. Dec. 6, 2018); *Clayton C. v. Comm'r of Soc. Sec.*, No. C18-638 BHS-BAT, 2018 WL 5985255, at *4 (W.D. Wash. Oct. 16, 2018), *R. & R. adopted sub nom, Christianson v. Berryhill*, 2018 WL 5962899 (Nov. 14, 2018). Relying on *Mann*, this Court has noted, "[O]n remand, a claimant may challenge an ALJ's appointment because Appointments Clause challenges are deemed to be in the category of nonjurisdictional structural constitutional objections that could be considered on appeal whether or not they were ruled upon below." *Anderson v. Comm'r of Soc. Sec.*, No. 18-CV-24-LRR, 2019 WL 1212127, at *5 (N.D. Iowa Feb. 19, 2019) (internal quotations omitted). If, however, the District Court declines to remand the case to re-weigh the opinion of Dr. Piburn, this argument should be deemed waived.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **reverse and remand the decision of the ALJ for further proceedings consistent with this Report and Recommendation** and **order the ALJ to conduct a proper review of Dr. Piburn's opinion** under 20 C.F.R. Section 404.1527(c).

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as

well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 25th day of July, 2019.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa