# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

JACOB R. WIEDEN,

        Plaintiff,

vs.

ANDREW M. SAUL, Commissioner of
Social Security,[1]

        Defendant.

No.  C18-3045-LTS

**MEMORANDUM OPINION AND
ORDER ON REPORT AND
RECOMMENDATION**

---

## I.    INTRODUCTION

This case is before me on a Report and Recommendation (R&R) filed by the Honorable Mark A. Roberts, United States Magistrate Judge.  *See* Doc. No. 16.  Judge Roberts recommends that I reverse and remand the decision by the Commissioner of Social Security (the Commissioner) denying Jacob R. Wieden's application for supplemental security income (SSI) under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381, et seq.  Neither party has objected to the R&R.  The deadline for such objections has expired.

## II.    APPLICABLE STANDARDS

### A.    *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole."  *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

---

[1] Andrew M. Saul was sworn in as Commissioner of Social Security on June 17, 2019.  Pursuant to Federal Rule of Civil Procedure 25(d), he has been substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence

differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B.    *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*,

333 U.S. 364, 395 (1948)).  However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask.  Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## III.    THE R&R

Wieden applied for SSI on January 5, 2015, alleging disability due to depression and anxiety disorders.  Doc. No. 16 at 1-2 (citing AR 44, 243-44).  After a hearing, an Administrative Law Judge (ALJ) applied the familiar five-step evaluation and found that Wieden was not disabled as defined in the Act.  Wieden argues (1) the ALJ failed to give good reasons for assigning partial weight to the treating psychiatrist opinion and (2) the ALJ was unconstitutionally appointed.  *Id.* at 12; *see also* Doc. No. 12.  Judge Roberts addressed each argument separately.

### A.    Analysis of the Treating Physician Opinion

With regard to the opinion of the treating psychiatrist, Dr. Piburn, Judge Roberts pointed out that the first treatment note from him in the record is dated December 5, 2014.  Doc. No. 16 at 12.  This note indicates Dr. Piburn reviewed psychological and neuropsycholgial testing that Wieden had completed.  *Id.* (citing AR 471).  Dr. Piburn wrote that testing revealed Wieden's intelligence was normal, but that it varied within the domains (verbal, nonverbal, processing speed).  *Id.*  While another psychologist had diagnosed him with anxiety disorder, Dr. Piburn noted that much more than simple anxiety appeared to be going on.  *Id.*  Wieden had never lived on his own and was struggling with basic tasks such as shopping, cleaning and bill paying.  *Id.*  Dr. Piburn saw Wieden for follow-up visits in February and March 2015, when Wieden was

transitioning from a structured living environment toward independent living. *Id.* at 13 (citing AR 464-69). His treatment notes from July 22, 2016, through January 6, 2017, document Wieden's decline in mental health, deterioration of his physical condition and inability to function outside a structured living setting. *Id.* (citing AR 59-615).

Judge Roberts noted the ALJ gave Dr. Piburn's opinion "partial weight." *Id.* at 13-14 (citing AR 64-65). The ALJ discussed his opinion as follows:

> In his formal opinion, Dr. Piburn assessed extreme limitations. In a check-box portion of his opinion, Dr. Piburn rated the claimant's limitations on a scale of 1 to 5, with 5 representing a complete inability to perform the rated task on a regular, reliable, and sustained schedule. Dr. Piburn indicated that the claimant would be unable to perform a number of tasks such as performing activities within a schedule, maintaining regular attendance, and sustaining and [sic] ordinary routine without special supervision. He rated a slightly less severe, but still significant degree of restriction in a number of areas, including the claimant's ability to interact appropriately with the general public, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. In summary, Dr. Piburn rated the claimant as having marked restriction in his activities of daily living; extreme difficulties in maintaining social functioning; as well as "constant" deficiencies in concentration, persistence, or pace; and "continual" episodes of deterioration and decompensation. Dr. Piburn indicated that he would rate the claimant as having a GAF score of 30, representing "severe disabling illness." In narrative explanations Dr. Piburn indicated that the claimant has compliance issues which are a part of his symptomology, and described him as self-defeating. (Exhibit 11F.) In treatment notes Dr. Piburn also indicated his belief that the claimant had extreme limitations, and opined that he would be disabled. (*See*, Exhibit 12F.) As a treating physician, Dr. Piburn can be expected to have particular insight into the claimant's functional restrictions over time. However, while the record does support some degree of limitation, the extreme nature of the limitations assessed in this opinion are not entirely consistent with or supported by the medical evidence as a whole. In particular, they are not consistent with the educational assessment at Exhibit 7E, which, while supportive of limitations does not indicate limitations as extreme as those assessed by Dr. Piburn. It is inconsistent with the assessment in Exhibit 2F, which was grossly normal and indicated that the claimant would have the abilities to attend college. Likewise, it is inconsistent with the claimant's own testimony. As discussed

further below, the claimant testified that he is picky with regard to jobs and that there are several jobs that he would not do. He also described himself as "basically a lazy person." Given all of these factors, Dr. Piburn's opinion has been given only partial weight.

*Id.*

Judge Roberts then discussed the legal standards and regulations for analyzing a treating provider's opinion, noting that this process requires consideration of the following factors: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors. *Id.* at 15 (citing 20 C.F.R. §§ 404.1527(c)(1-5), 416.927(c)). With regard to the examining relationship, Judge Roberts observed that Dr. Piburn had examined Wieden multiple years over the few years that Wieden sought treatment. He noted that Dr. Piburn's opinion should be entitled to more weight than the opinions of the state agency psychological consultants who did not examine Wieden and who completed their opinions in 2015 – before Wieden's attempt at living alone had failed. *Id.* (citing AR 122-35, 136-54). Judge Roberts concluded this factor weighed in favor of affording more than "partial weight" to Dr. Piburn's opinion. *Id.* at 16.

With regard to the treatment relationship, Judge Roberts noted the record supported Dr. Piburn's status as a treating source, such that his opinion should have been given increased weight. *Id.* As to supportability, Judge Roberts noted the ALJ did not criticize Dr. Piburn's opinion for lack of sufficient support. *Id.* Indeed, the ALJ noted that Dr. Piburn provided narrative explanations to support his conclusions and that his treatment notes also supported his conclusions. *Id.* (citing AR 64). Judge Roberts pointed out that while Dr. Piburn was given a form document to provide his opinion, he supplemented his answers with long handwritten notes, elevating the form from a document containing "checked boxes, circled answers, and brief fill-in-the-blank responses" of "little evidentiary value" into a well-supported opinion. *Id.* at 16-17 (quoting *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018)). Dr. Piburn also attached treatment notes to his opinion in support of his conclusions. *Id.* at 17. Finally,

his treatment notes supported his opinion by documenting issues of Wieden's self-defeating attitude, anger management issues, anxiety issues and difficulties Wieden had trying to live independently. *Id.* (citing *e.g.* AR 466, 468, 472, 608, 613). Judge Roberts concluded lack of supportability was not a good reason to afford Dr. Piburn's opinion only partial weight. *Id.*

Next, Judge Roberts considered the consistency of Dr. Piburn's opinion with other evidence in the record. He noted that Dr. Piburn supported his conclusions about the severity of Wieden's disability. *Id.* Wieden's mental disorganization and self-destructiveness led Wieden to miss six out of nine scheduled appointments and a GAF score of 30 that Dr. Piburn assigned was indicative of severe disabling illness under the old DSM IV.[2] *Id.* Dr. Piburn also explained that Wieden's depression was interfering with his ability to seek treatment for his high blood pressure and would exacerbate his obesity. *Id.* He did not find Wieden to be a malingerer and noted his "noncompliance is secondary to mental illness, to personality disorder." *Id.* (citing AR 594). He rated Wieden's restriction of activities of daily living as "extreme," his deficiencies in concentration, persistence or pace as "constant" and episodes of deterioration or decompensation in a work-like setting to be "continual." *Id.* at 17-18 (citing AR 597).

Wieden argues that Dr. Piburn's assessment differs from an assessment performed by a consultative examiner in November 21, 2014, and an education assessment performed in March 2015, because at the time of Dr. Piburn's assessment, Wieden had been removed from a structured living environment.[3] Doc. No. 13 at 10. The Commissioner argues that the ALJ properly considered the post-May 2015 evidence and that such evidence supports the RFC. Judge Roberts noted that there was little discussion

---

[2] The latest version of the Diagnostic and Statistic Manual of Mental Disorders (DSM-V) released in 2013, no longer uses GAF scores because of their "conceptual lack of clarity" and "questionable psychometrics in routine practice." *Diagnostic and Statistical Manual of Mental Disorders*, 16 (5th ed. Am. Psychiatric Ass'n 2013).

[3] Wieden was first removed from a structured living environment in May 2015. AR 483-85.

in the ALJ's decision to indicate he had considered the post-May 2015 evidence of Wieden's performance after being removed from a structured living environment. Doc. No. 16 at 18. Judge Roberts pointed out that the ALJ stated Wieden was "'struggling' with his living on his own," but that Wieden "also successfully transitioned to supervised independent apartment living around the time of his 18th birthday." *Id.* (citing AR 19, 22). Judge Roberts noted the ALJ failed to address Wieden's testimony that he was living in a homeless shelter by the time of the hearing. *Id.* In other words, while he may have transitioned to supervised independent living when he was 17 years old, and then to his own apartment while in high school, he was subsequently evicted after demonstrating his inability to manage on his own, a fact the ALJ did not address. *Id.* (citing AR 90).

Judge Roberts recommends that I find the ALJ did not sufficiently consider the section 404.1527(c) factors in analyzing Dr. Piburn's opinion. The ALJ's only reasons for giving the opinion partial weight were inconsistencies "with the medical evidence as a whole" and inconsistencies between Dr. Piburn's opinion and Wieden's testimony. *Id.* at 18-19. With regard to the inconsistencies with the medical evidence, Judge Roberts noted the ALJ failed to take into account Wieden's change in circumstances and his deterioration after leaving a structured living environment. With regard to the inconsistencies with Wieden's testimony, the ALJ stated:

> Of particular note in the instant case is the claimant's own testimony with regard to his ability to work. At hearing [sic], the claimant testified that he was "basically a lazy person," and indicated that he was "very picky" about jobs and went into some detail about jobs that he would not do. He stated that he likes to do things his own way, and indicated that he was not interested in doing jobs where he would be managed by others. In particular, he stated that he does not want to be a janitor, or a fast food worker, or a shopping cart runner at a grocery store. He stated that he has been given advice to seek entry level employment, but that he does not want to do that because he is stubborn about what kind of work he is willing to perform.

*Id.* at 19 (citing AR 29). Judge Roberts noted that given the medical evidence that overwhelmingly supports the diagnoses of bipolar disorder (the dominant feature of which

is depression), a generalized anxiety disorder, a panic disorder and a borderline personality disorder and that these make him a poor reporter of his symptoms, "it would be a mistake to rely too heavily on [his] justification for his inability to sustain himself." *Id.* In particular, Judge Roberts noted that Dr. Piburn had stated: "This man may be the most self-defeating individual I have worked with in psychiatric practice for 42 yrs. (within the population of non-psychotic patients)." *Id.* (citing AR 594).

Judge Roberts also observed that Wieden's severe anxiety and difficulty leaving home are documented in Dr. Piburn's treatment notes. While the Commissioner argues Wieden's symptoms are self-reported or merely "venting," Judge Roberts reasoned that Dr. Piburn's treatment notes also contain his observations of Wieden's state. *Id.* at 20. Judge Roberts noted the ALJ did not find Dr. Piburn's notes were internally inconsistent or lacked sufficient medical support, just that they were inconsistent with the state agency reports and Wieden's own testimony. *Id.* Because Judge Roberts found the ALJ failed to properly evaluate the consistency of Dr. Piburn's opinion with other evidence in the record and that this could have affected the ultimate weight the ALJ gave to his opinion, he recommends the ALJ properly weigh this evidence on remand. *Id.*

As to the remaining factor of specialization, Judge Roberts noted that by examining the nature and content of his treatment notes, Dr. Piburn appears to be a licensed physician whose specialty is psychiatry. *Id.* His credentials are not stated in the records and he recommends the ALJ develop the record on this issue on remand to adequately weigh his opinion. Judge Roberts stated that if Dr. Piburn is a physician specializing in psychiatry, the ALJ is required to credit his opinion if it is supported by the record. *Id.* (citing *Brown v. Astrue*, 611 F.3d 941, 951, 952 (8th Cir. 2010)).

Finally, Judge Roberts considered additional arguments raised by the Commissioner. *Id.* at 21. The Commissioner argues that Wieden's lack of success in college does not necessarily correlate with a finding of disability and encourages the court not to give much weight to Wieden's emphasis on this factor. Judge Roberts found the Commissioner misconstrued Wieden's argument. He stated Wieden did not claim to be

disabled merely because he was not able to succeed in a desired vocational or educational pursuit. Indeed, he noted Wieden admitted he was intelligent and able to obtain above-average grades in high school. Rather, he was using his failure to attend college to show that his disabilities prevent him from functioning and interacting with others in an unstructured environment. *Id.* In other words, his inability to attend school was consistent with his disabling limitations. *Id.*

Next, Judge Roberts addressed the Commissioner's argument that Wieden's reluctance or refusal to pursue a recommended course of treatment weighed against a finding of disability. *Id.* (citing Doc. No. 13 at 12). Judge Roberts noted that Dr. Piburn concluded Wieden's non-compliance was secondary to his mental illness. *Id.* at 22 (citing AR 594). Judge Roberts observed that this conclusion was consistent with the testimony of Wieden's residential and post-residential therapist who testified at the hearing. *Id.* (quoting AR 103). He also reasoned that the Commissioner did not cite evidence that Wieden refused to participate in counseling and Wieden did, in fact, obtain counseling a few months later. *Id.* (citing AR 519). Judge Roberts noted that none of Wieden's mental health professionals suggested impatient treatment, which distinguished Wieden's case from *Julin v. Colvin*, 826, F.3d 1082, 1087 (8th Cir. 2016), cited by the Commissioner. *Id.* While reluctance or refusal to pursue treatment may be a basis for questioning a claimant's credibility, Judge Roberts noted the Commissioner cited almost no evidence of Wieden's refusal, as opposed to inability, to obtain treatment. *Id.*

In summary, Judge Roberts recommends the case be remanded for further development and consideration of the evidence, particularly related to Dr. Piburn's opinion. *Id.* at 23. While Wieden argues the case should be remanded for an award of benefits, Judge Roberts concluded the ALJ failed to conduct a complete review of Dr. Piburn's opinion according to the factors under 20 C.F.R. § 404.1527(c), not that the record overwhelmingly supports an immediate finding of disability. Therefore, he recommends remanding the case for the ALJ to conduct a proper review of Dr. Piburn's opinion. *Id.*

### B. *Appointments Clause Challenge*

With regard to Wieden's argument that the ALJ was unconstitutionally appointed, Judge Roberts found that Wieden failed to timely raise his argument. *Id.* He explained that this court has previously found that similar claims under *Lucia v. SEC*, 138 S. Ct. 2044 (2018), are waived when they are not raised at the administrative level. *Id.* at 23-25. The Eighth Circuit has also held a party forfeits an Appointments Clause challenge by failing to raise it to the agency. *Id.* (citing *Kimberly B. v. Berryhill*, No. 17-CV-5211 (HB), 2019 WL 652418, at *14 (D. Minn. Feb. 15, 2019) (citing *NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 798 (8th Cir. 2013))). Judge Roberts acknowledged Wieden's argument that raising such a claim before the ALJ would have been futile under Social Security EM-1003,[4] but reasoned that nothing prevented Wieden from raising the issue to preserve it for appeal. *Id.* at 25.

Because Judge Roberts recommends the case be remanded for the ALJ to properly weigh the opinion of Dr. Piburn, he recommends that Wieden be permitted to assert his Appointments Clause challenge on remand. *Id.* at 25-26 (citing *Anderson v. Comm'er of Soc. Sec.*, No. 18-CV-24-LRR, 2019 WL 1212127, at *5 (N.D. Iowa Feb. 19, 2019) (relying on *Mann v. Berryhill*, 4:18-CV-3022, 2018 WL 6421725, at *8 (D. Neb. Dec. 6, 2018))).

## IV. DISCUSSION

Because the parties did not object to the R&R, I have reviewed it for clear error. Judge Roberts applied the appropriate legal standards in considering whether the ALJ properly weighed Dr. Piburn's opinion under the factors listed in 20 C.F.R. § 404.1527(c). Based on my review of the record, I find no error – clear or otherwise –

---

[4] Judge Roberts explains EM-1003 was issued on January 30, 2018, and stated "Because the SSA lacks the authority to finally decide constitutional issues such as these, ALJs will not discuss or make any findings related to the Appointments Clause issue on the record." Doc. No. 16 at 25, n.7.

in Judge Roberts' recommendation.  As such, I adopt the R&R in its entirety, including Judge Roberts' recommendation that Wieden be permitted to assert his Appointments Clause challenge on remand.  As noted in *Mann*, it is up to the Commissioner to decide whether to assign a different ALJ on remand to avoid any *Lucia* issue.  *Mann*, 2018 WL 6421725 at *8.

## V.    CONCLUSION

For the reasons set forth herein:

1.    I **accept** Judge Roberts' R&R (Doc. No. 16) without modification.  *See* 28 U.S.C. § 636(b)(1).

2.    Pursuant to Judge Roberts' recommendation:

   a.    The Commissioner's determination that Wieden was not disabled is **reversed** and this matter is **remanded** to the Commissioner for further proceedings as described by Judge Roberts.

   b.    Judgment shall enter in favor of Wieden and against the Commissioner.

   c.    If Wieden wishes to request an award of attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, an application may be filed up until 30 days after the judgment becomes "not appealable," i.e., 30 days after the 60-day time for appeal has ended.  *See Shalala v. Schaefer*, 509 U.S. 292, 296 (1993); 28 U.S.C. §§ 2412(d)(1)(B), (d)(2)(G).

**IT IS SO ORDERED.**

**DATED** this 27th day of August, 2019.

_____
Leonard T. Strand, Chief Judge